UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

GREG ANDRES on behalf of themselves and )
other similarly situated parties, )
PAULA ANDRES on behalf of themselves and )
other similarly situated parties, )
)
        Plaintiffs, )
)
        v. )    No. 4:24-cv-00038-SEB-KMB
)
UNITED STATES OF AMERICA, )
)
        Defendant. )

## ORDER DIRECTING FURTHER PROCEEDINGS

Plaintiffs Greg and Paula Andres ("Plaintiffs") brought this putative class action lawsuit against Defendant the United States of America (the "Government"), seeking just compensation for the alleged Fifth Amendment taking of their private property for public use, pursuant to the National Trails Act System Act Amendments of 1983 (the "Trails Act"), 16 U.S.C. § 1241 *et seq.* Pending before the Court are Plaintiffs' Motion for Class Certification, dkt. 10, and Motion for Oral Argument, dkt. 60.

Having reviewed the parties' respective briefs on class certification, the Court finds that it requires further evidence in order to resolve certain disputes that have arisen between the parties and to determine the propriety of certifying this lawsuit as a class action. Plaintiffs are allowed an opportunity to supplement the evidentiary record in a manner that addresses the deficiencies identified below. Thereafter, we shall set the class certification

1

motion for oral argument, during which the legal and factual issues described herein can be addressed.

We provide the following overview of the legal, factual, and procedural background as we understand it to provide context to the areas of evidentiary deficiency as identified by the Court.

## BACKGROUND

### I.     Legal Background

#### A.     The Trails Act

When a rail carrier intends to abandon or discontinue[1] its railroad services, the Trails Act allows for the "unused railroad rights-of-way [to be] converted into recreational trails[,] notwithstanding whatever reversionary property interests may exist under state law." *Preseault v. I.C.C.*, 494 U.S. 1, 4 (1990) ("*Preseault II*"). This "railbanking" scheme preserves inactive rail trackage for potential future rail service while permitting interim use of the rail line as a public trail. Section 8(d) of the Trails Act provides, in relevant part, that a railway carrier seeking "to cease operations along a particular route may negotiate with a State, municipality, or private group that is prepared to assume financial and managerial responsibility for the right-of-way." *Id.* at 6–7 (citing 16 U.S.C. § 1247(d)). Upon application, the Surface Transportation Board (the "Board" or the "STB"), which oversees railway

---

[1] The Interstate Commerce Act distinguishes between the "discontinuance" and the "abandonment" of a rail line. *See* 49 U.S.C. § 10903. Discontinuance, on one hand, "allows a railroad to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future." *Preseault II*, 494 U.S. at 5 n.3. Abandonment, on the other hand, renders the rail line "no longer part of the national transportation system." *Id.*

operations, *see* 49 U.S.C. §§ 10502, 10903, may issue a Notice of Interim Trail Use or Abandonment ("NITU") that transforms a rail line into a public trail. *Preasault II*, 494 U.S. at 5–7.

Typically, "railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests. While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations." *Id.* at 8. "Where the railroad held an easement to the underlying property, the conversion of the right-of-way to a recreational trail, and thus the implementation of a new easement, can form the basis for a physical takings claim under the Fifth Amendment to the Constitution." *Memmer v. United States*, 50 F.4th 136, 139–40 (Fed. Cir. 2022) (citing *Preseault v. United States*, 100 F.3d 1525, 1550 (Fed. Cir. 1996) (en banc)). The taking itself "begins upon the issuance of the NITU, the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Id.* at 140 (emphasis in original) (citations omitted).

### B.    The Little Tucker Act

The Little Tucker Act states, in pertinent part, that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress . . . ." 28 U.S.C. § 1346(a)(2). In other words, the Little Tucker Act "unequivocally provides the Federal Government's consent to suit for certain money-damages claims." *United States v. Bormes*, 568 U.S. 6, 10 (2012).

Such claims against the Government are subject to a six-year statute of limitations, 28 U.S.C. § 2401(a), and individual recovery may not exceed $10,000 in monetary damages.

As a point of contrast, the Tucker Act, 28 U.S.C. § 1491, the Little Tucker Act's statutory companion whose "scope . . . is otherwise the same," "assigns jurisdiction to the Court of Federal Claims regardless of monetary amount." *Bormes*, 568 U.S. at 10 n.2. In order to sustain a district court's jurisdiction under the Little Tucker Act, plaintiffs may waive their right to recover monetary damages in excess of $10,000. *See Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 697 n.4 (N.D. Ill. 2020).

## II.   Factual Averments

Plaintiffs and putative class members own fee simple interests in land underlying and/or adjacent to a 62.3-mile segment of rail line that runs from Bedford to New Albany, Indiana, crossing through Clark, Floyd, Lawrence, Orange, and Washington Counties (hereinafter, the "Corridor"). In September 1987, following a series of name changes, consolidations, purchases, reorganizations, and mergers, the Corridor was acquired by CSX Transportation ("CSXT"), which retained an easement across Plaintiffs' parcels for railroad purposes.

On December 18, 2017, CSXT petitioned the Board for authorization to abandon its railway operations along the Corridor. On February 28, 2018, the Board granted CSXT's request and issued a NITU (hereinafter, the "2018 NITU"), pursuant to § 8(d) of the Trails Act, 16 U.S.C. § 1247(d). The 2018 NITU granted CSXT the right to negotiate a trail use agreement with the Indiana Trails Fund ("Indiana Trails") and the City of New Albany (the "City"). (CSXT and Indiana Trails apparently never did finalize an agreement.) In October

2022, the Board issued a second NITU that authorized CSXT to negotiate new trail use agreements with the City and Radius Indiana ("Radius"), another prospective trail sponsor. In February 2023, CSXT sold and fully transferred its property rights in the Corridor to the City and Radius.

### III.    Procedural Background of Litigation

On February 23, 2024, Plaintiffs filed this putative class action lawsuit, seeking just compensation under the Fifth Amendment for the alleged taking of their property interests along the Corridor.[2] They assert that, but for the 2018 NITU issued pursuant to § 8(d) the Trails Act, CSXT's abandonment of the Corridor would have extinguished the railroad's easement(s), thereby restoring Plaintiffs' unencumbered property interests. Section 8(d), however, thwarted the reversion of Plaintiffs' exclusive possession and use of their property, resulting in an uncompensated taking by the Government. In accordance with the Little Tucker Act's jurisdictional limitations, the individual monetary damages sought by Plaintiffs do not exceed $10,000. 28 U.S.C. § 1346(a)(2).

On February 27, 2024, shortly after filing their complaint, Plaintiffs moved for class certification, pursuant to Federal Rule of Civil Procedure 23. Dkt. 10. As Plaintiffs' class

---

[2] We take judicial notice of the nine other cases wherein plaintiffs seek (or have sought) just compensation for the alleged takings along the same Corridor, which, according to the Government, account for approximately 500 claims. *Bauer v. United States*, No. 1:24-cv-287 (Fed. Cl. filed Feb. 22, 2024) (opt-*in* class action brought by undersigned counsel); *Zinser v. United States*, No. 1:18-cv-306 (Fed. Cl. filed Feb. 28, 2018); *Cessna v. United States*, No. 1:18-cv-4372, dkt. 99 (Fed. Cl. filed Dec. 13, 2024) (stipulation of dismissal with prejudice); *Alexander Revocable Trust v. United States*, No. 1:18-cv-4371 (Fed. Cl. filed Dec. 20, 2019); *Popp v. United States*, No. 1:19-cv-358 (Fed. Cl. filed Mar. 8, 2019); *Lawrence Cnty. Farm Supply, LLC v. United States*, No. 1:22-cv-92 (Fed. Cl. filed Jan. 31, 2022); *Kay v. United States*, No. 1:22-cv-1657 (Fed. Cl. filed Nov. 7, 2022); *Asher v. United States*, No. 1:20-cv-185 (Fed. Cl. filed Feb. 21, 2020); *Farrell v. United States*, No. 1:24-cv-301 (Fed. Cl. filed Feb. 26, 2024).

certification motion pended, we discovered that, on February 22, 2024 (the day before this lawsuit was initiated), Plaintiffs' counsel had filed and sought class certification in a nearly identical putative class action lawsuit in the Court of Federal Claims. *Bauer v. United States*, No. 1:24-cv-287 (Fed. Cl. filed Feb. 22, 2024). Following a September 20, 2024, telephonic status conference, we stayed any ruling by us on Plaintiffs' class certification motion pending the Court of Federal Claims's decision in *Bauer*.

On April 9, 2025, the Court of Federal Claims denied the landowner plaintiffs' motion for class certification, reasoning, *inter alia*, that the plaintiffs had failed to adduce sufficient evidence, beyond their attorneys' factual averments set out in their briefs and at oral argument, establishing the essential elements of an opt-in class under the Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"). *See Bauer v. United States*, 176 Fed. Cl. 240, 248, 255–56 (2025).

After a status conference conducted on May 15, 2025, we denied Plaintiffs' request for supplemental briefing finding that Plaintiffs had articulated "no specific reason for why supplemental briefing would be necessary or particularly helpful . . . ." Dkt. 58 at 1. A week later, on May 21, 2025, Plaintiffs requested oral argument on their pending class certification motion, dkt. 60, which request the Government has opposed, dkt. 61.

Plaintiffs' Motion for Class Certification, dkt. 10, and Motion for Oral Argument, dkt. 60, are fully briefed. However, as we explain below, prior to reaching a decision on Plaintiffs' class certification motion, we enlist counsel in providing further evidence addressing the issues highlighted herein.

## LEGAL STANDARD

District courts retain broad discretion when deciding whether to certify a lawsuit as a class action. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). That discretion notwithstanding, the party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets the requirements of Federal Rule of Civil Procedure 23; that is, the proposed class must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation. *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015) (citing Fed. R. Civ. P. 23(a)). Where, as here, "th[e] suit seeks money damages on behalf of the class, based on common questions," *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017), the party seeking class certification must also satisfy Rule 23(b)(3), which further requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Seventh Circuit also requires a showing of "ascertainability," meaning "that [the] class be defined . . . clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

A party's failure to carry its burden as to any one of Rule 23's requirements "precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008); *e.g.*, *Schmitt v. United States*, 203 F.R.D. 387, 400 (S.D. Ind. 2001) (certifying Rails-to-Trails lawsuit as a class action). In undertaking the class certification analysis, courts "should not turn the . . . proceedings into a dress rehearsal for the trial on the merits." *Messner v.*

*Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). That said, Rule 23 does "not [entail] inquiries that the court is free to make in a fact-free zone," and, as such, we may not "simply assume the truth of the matters as asserted by the plaintiff[s]." *Priddy*, 870 F.3d at 660 (citation modified). "If there are material factual disputes, the court must 're-ceive evidence . . . and resolve disputes before deciding whether to certify the class.' " *Messner*, 669 F.3d at 811 (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003) ("Class certification requires a rigorous investigation into the propriety of proceeding as a class . . . .").

Class certification decisions are inherently "tentative," as judges retain the flexibil-ity to modify class definitions in accordance with subsequent developments. *Fonder v. Sheriff of Kankakee Cnty.*, 823 F.3d 1144, 1147 (7th Cir. 2016). Nevertheless, the rigor demanded by Rule 23 "cannot be bypassed" simply by plaintiffs' promise that they will "eventually establish[ ] that the prerequisites for class status have been met." *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001). Accordingly, "part[ies] seeking to maintain a class action 'must affirmatively demonstrate [their] compliance' with Rule 23"—ordinar-ily "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–51 (2011)).

## DISCUSSION

Plaintiffs initially sought certification of the following class:

All persons who, as of February 28, 2018, owned a fee interest in property constituting part of the Corridor which is now occupied or controlled by the City of New Albany and/or Radius Indiana for trail use by virtue of the

8

Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board on February 28, 2018 (as amended on October 12, 2022) and who have damaged by being deprived of their rights to possess, control, and enjoyment of their land pursuant to the STB's NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the Tucker Act.

Dkt. 11 at 3.

In opposing class certification, the Government contends that Plaintiffs' (first) proposed class fails the ascertainability requirement and improperly omits the Little Tucker Act's jurisdictional language. The Government further maintains that Plaintiffs fail to demonstrate, by the preponderance of the evidence, that the requirements of Rule 23 have been satisfied.

In their reply brief, Plaintiffs revised their proposed class definition as follows:

All persons who, as of February 28, 2018, owned a fee interest in property constituting any part of the Corridor *for which the CSX Transportation, Inc. previously held an easement for railroad purposes* and which is now occupied or controlled by the City of New Albany and/or Radius Indiana for trail use by virtue of the Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board on February 28, 2018 (as amended on October 12, 2022), and *who claim a taking of their rights* to possess, control, and enjoyment of their land pursuant to the STB's NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the Little Tucker Act, *where such claims do not exceed $10,000.00 per claim, or where the class member waives any damages in excess of $10,000.00 per claim.*

*Excluded from this Class are all persons who have elected to pursue claims in separate lawsuits against the United States for compensation for the same interests in land, with the exception of* Bauer v. United States*, No. [1]:24-cv-0287, pending in the Court of Federal Claims.*

Dkt. 35 at 9 (revisions in italics).

Before turning to the requirements of Rule 23, we address the Government's arguments about ascertainability and the omission of the Little Tucker Act's jurisdictional provision in the class definition.

## I.    Ascertainability

An ascertainable class is "defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. One "common problem[ ] that . . . cause[s] plaintiffs to flunk this requirement" occurs when class membership depends on the merits of a putative class plaintiff's claim. *Id.* at 659–60. These so-called "fail-safe classes" are "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner*, 669 F.3d at 825. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* This, according to the Seventh Circuit, "raises an obvious fairness problem for the defendant," who "is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins*, 795 F.3d at 660. Fail-safe problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825; *see also In re Dealer Management Systems Antitrust Litig.*, No. 18-cv-2521, 2024 WL 3509668, at *3 n.5 (N.D. Ill. July 22, 2024) (noting that plaintiffs permissibly may modify proposed class definitions in response to defendants' arguments).

Here, the Government contends that Plaintiffs' (initial) proposed class definition improperly creates a fail-safe class by defining potential plaintiffs as landowners "who have [been] damaged by being deprived of their rights to possess, control, and enjoyment of

their land pursuant to the STB's NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the [Little] Tucker Act." Dkt. 11 at 3. This phrasing, as the Government argues, "is expressly premised on whether the United States has deprived a landowner of property"—i.e., whether the Government is liable to the putative class member. Dkt. 31 at 14. Although Plaintiffs disagree that their first proposed class definition creates a fail-safe problem, they have nonetheless "admit[ted] to some inartful language" and accordingly have modified the class definition. Dkt. 35 at 9.

In light of the (above-recited) modified class definition, we are uncertain as to whether the Government believes its fail-safe objection has been rendered moot; or, to the extent that the Government may still maintain an objection, whether and if so how the revised class definition presents a fail-safe problem. Because we do not "formulate arguments for the parties," *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), the parties should prepare to discuss this issue at oral argument.

## II.    The Little Tucker Act's Jurisdictional Language

The Government also asserts that Plaintiffs' class certification motion must be denied because they initially omitted the Little Tucker Act's $10,000 claim limit, without which district courts do not have original jurisdiction. *Bormes*, 568 U.S. at 10. Although Plaintiffs repeatedly reference the Little Tucker Act throughout their Complaint, they have nonetheless admitted to this "inadvertent omission" and have now added the jurisdictional language to their amended definition. Dkt. 35 at 9. At oral argument, the parties should be prepared to discuss whether this issue has been mooted by Plaintiffs' revised definition.

### III.    Requirements of Rule 23

The Government's principal contention regarding the merits of Plaintiffs' class certification motion is that Plaintiffs have failed to provide "any exhibits or evidence supporting the[ir] factual allegations . . . ." Dkt. 31 at 15. It is well established that a party seeking class certification "must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but it "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 569 U.S. at 33 (emphasis in original) (quoting *Wal-Mart*, 564 U.S. at 349). "In evaluating these factors, the court must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018).

In accordance with these legal principles, we agree with the Government that the evidentiary deficiencies in Plaintiffs' motion hinders a meaningful assessment of Rule 23's essential components (except, as noted below, with regard to the adequacy of class counsel), thereby precluding class certification. Plaintiffs nonetheless shall be provided an opportunity to supplement the evidentiary record insofar as is necessary to establish the essential components of class certification under Rule 23 and Seventh Circuit precedent.

### A.    Numerosity

Rule 23(a) mandates that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While 'impracticable' does not meant 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the

members of the class.' " *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting 7A Wright & Miller's Federal Practice & Procedure § 1762 (3d ed.)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). "But a class of 40 or more does not guarantee numerosity." *Anderson*, 986 F.3d at 777. Rather, courts must weigh the practicability of joinder by considering "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.*

Plaintiffs here assert that the putative class is comprised of "several hundred" individuals, who, "based on public record searches, hold more than 300 parcels of land (averaging less than one-third of an acre) along 62.3 miles of the Corridor," which stretches across five rural counties in southern Indiana. Dkt. 35 at 16. Plaintiffs contend that "approximately 10% of the claims are less than 1,000 square feet, and approximately 40% are less than 0.1 acres, with the average claim less than one-third of an acre." Dkt. 11 at 8. Thus, Plaintiffs reason, joinder would be impracticable because many of the potential class members stand to recover only modest awards, rendering a class action the most efficient means of proceeding.

Whatever the veracity of Plaintiffs' estimates may be, Plaintiffs have not substantiated their contentions with any evidence or otherwise revealed their methodology. For instance, Plaintiffs have not disclosed the evidentiary basis for their 300-parcel estimate, nor have they explained how the number of parcels correlates to their estimate on the number of potential claimants. Similarly, Plaintiffs have not substantiated their estimations

regarding the size of individual claims (except that such claims do not exceed the $10,000 jurisdictional limit). Although Plaintiffs state that their estimates are "based on public record searches," they have submitted no documentation or analyses reflecting such investigatory efforts. Absent any evidentiary support, we cannot rule that Plaintiffs have demonstrated numerosity.

### B.    Commonality

The commonality inquiry asks whether "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a), which requires "class members [to] 'have suffered the same injury.' " *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Class members' "claims must depend upon a common contention," and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Under Rule 23, "a single common question will do." *Id.* at 359 (citation modified). Additionally, the existence of "some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir. 1992).

Regarding the case at bar, Plaintiffs assert that commonality among class members is reflected in their newly refined class definition, according to which all putative class members own fee simple interests in land over which CSXT held only an easement for railroad purposes. Furthermore, Plaintiffs maintain, the uniform application of a single federal statute—the 2018 NITU issued pursuant to § 8(d) of the Trails Act—effected the same injury: to wit, a taking without just compensation. The Government, by contrast, argues

14

that resolving Plaintiffs' claims will require "evaluating each individual landowner's deeds and any incorporated documents, as well as the relevant railroad source conveyances" and assessing just compensation on an individual basis—none of which lends itself to classwide resolution. Dkt. 31 at 17–18.

Although factual variations among class members do not necessarily defeat a finding of commonality, Plaintiffs here have stopped short of making a threshold evidentiary showing that the common question they pose—whether the 2018 NITU effected a taking—is capable of resolution in a single stroke. *See Keele*, 149 F.3d at 594 ("[F]actual variations among class members' grievances do not defeat a class action."); *Wal-Mart*, 564 U.S. at 350. Without evidence of how the railroad acquired its right(s)-of-way, the nature of its easement(s), and/or proof of the landowners' property interests, we can only speculate as to whether or to what extent resolution of one claim illuminates the resolution of another.

## C.    Typicality

The element of typicality, which is closely related to commonality, requires that the class representatives' claims share the same essential characteristics as those of the putative class members. *Retired Chicago Police Ass'n*, 7 F.3d at 597. "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation modified). In other words, typicality is "generally met" when the defendant has engaged "in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (citations omitted).

When evaluating typicality in similar class action lawsuits involving railroad easements, district courts within the Seventh Circuit and beyond have declined "to base [their] ruling on speculation and hunches" alone. *McDaniel v. Qwest Commc'ns Corp.*, No. 05-cv-01008, 2006 WL 1476110, at *9 (N.D. Ill. May 23, 2006) (denying class certification in trespass/unlawful enrichment lawsuit based on four telecommunications companies' installation and operation of fiber optic cables in railroad rights-of-way that crossed or were adjacent to plaintiffs' properties). Rather, plaintiffs seeking class certification "must provide 'evidence that [their] deed[s] [are] similar to the deeds held by other potential class members, or that there is a limited range of possible deed language.' " *Id.* at *8 (quoting *Kirkman v. N. Carolina R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)). Without such evidence, courts cannot reasonably discern whether proof of one plaintiff's claims furthers the claim of other putative class members, as is essential to establish typicality. *See id.* at *7 (collecting cases).

Here, Plaintiffs aver that their claims are typical of the class's claims because their contentions similarly implicate fee ownership, a railroad easement, and an alleged Trails Act taking that are shared amongst the putative class members. Unfortunately, Plaintiffs failure to provide any evidence establishing, for instance, the named Plaintiffs' property interests (never mind the specific parcel number(s), address(es), or other identifying information) or revealing the alleged railroad easement's operative language precludes a finding of typicality.

### D.    Adequacy of Representation

District courts must also ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation inquiry is two-fold: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *modified* (Sept. 22, 2011). We address each aspect, in turn.

#### 1.    *Adequacy of Named Plaintiffs as Class Representatives*

The adequacy of representation with regard to the named Plaintiffs turns on whether there are any conflicts of interest with members of the putative class. *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 331 (1980). Without evidence that Plaintiffs claims are in fact typical of the claims of potential class members, we cannot determine whether Plaintiffs qualify as adequate class representatives. *See Brown v. United States*, 126 Fed. Cl. 571, 586–87 (2016).

#### 2.    *Adequacy of Class Counsel*

Evaluating the adequacy of proposed class counsel requires consideration of class counsel's experience and competence in light of counsel's efforts identifying or investigating potential claims; counsel's experience in similar class actions; counsel's knowledge of applicable law; the resources counsel will commit to class representation; and any other matter relevant to counsel's ability to fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1).

Here, Plaintiffs propose the following class counsel, a group comprised of four attorneys from Lewis Rice, LLC ("Lewis Rice"), a St. Louis, Missouri, law firm:

- Lindsay S.C. Brinton, who has over seventeen years of legal experience and has served as lead counsel in more than seventy Trails Act matters in federal court;

- Meghan S. Largent, who has more than eighteen years of experience and has served as lead counsel in more than sixty Trails Act cases. Ms. Largent also handles general commercial litigation matters, products liability, toxic tort cases, and state and local eminent domain matters;

- Michael Armstrong, who has eleven years of experience in general and commercial litigation, land use, eminent domain, products liability, professional licensing, general appellate practice, intellectual property, and Trails Act matters;

- T. Hunter Brown, an associate attorney with seven years of experience in commercial and intellectual property litigation, securities arbitrations before the Financial Industry Regulation Authority, and Trails Act cases before the Court of Federal Claims.

The Lewis Rice firm consists of more than one hundred attorneys as well as extensive support staff members, making the proposed class counsel well-equipped to serve as such in the instant matter. Plaintiffs also assert that the undersigned counsel has specific experience with the Corridor[3] at the heart of this case, and that "Lewis Rice has already

---

[3] Undersigned counsel represented clients in *Cessna v. United States*, No. 1:18-cv-04372-EMR, dkt. 99 (Fed. Cl. filed Dec. 13, 2024) (stipulation of dismissal with prejudice); *Popp v. United States*, No. 1:19-cv-00358-EMR, dkt. 97 (Fed. Cl. Nov. 6, 2024) (stipulation of dismissal with prejudice); *Lawrence County Farm Supply, LLC v. United States*, No. 1:22-cv-00092-EMR (Fed.

conducted significant research to determine the identity and number of property owners that are likely entitled to make claims for compensation" regarding the 2018 NITU. Dkt. 11 at 13.

Although the Government has not challenged the adequacy of class counsel's representation, the court must satisfy itself that the appointment of Plaintiffs' counsel as class counsel would be in the best interest of the proposed class. Fed. R. Civ. P. 23(a)(4). Having considered Plaintiffs' counsel's extensive experience, we readily conclude that Plaintiffs' counsel possess sufficient experience and knowledge of the applicable law and the resources necessary to well-represent the proposed class. Accordingly, Plaintiffs have satisfied their burden of demonstrating the adequacy of representation by their proposed class counsel.

### E.    Rule 23(b)

Plaintiffs seek monetary damages; thus, they must also satisfy the conditions of Rule 23(b)(3), pursuant to which "the court [must] find[ ] that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also McDaniel*, 2006 WL 1476110, at *14 n.12 (noting that "Rule 23(b)(3) class actions have allowed courts to achieve significant judicial economies in Rails-to-Trails cases").

---

Cl. Oct. 4, 2024) (stipulation of dismissal with prejudice); and *Kay v. United States*, No. 1:22-cv-01657-EMR, dkt. 22 (Fed. Cl. June 18, 2024) (stipulation of dismissal with prejudice).

Once again, the lack of record evidence precludes our ability to assess whether these proceedings satisfy the requirements of Rule 23(b)(3). We cannot conclude, for instance, whether common questions predominate over individual issues without concrete evidence revealing the nature of the railroad's right-of-way over the affected properties as well as the nature of Plaintiffs' and putative class members' property interests. As the *Bauer* court noted in declining class certification, "[w]hether a NITU takes property depends on the nature of the railroad's right-of-way over each piece of property it crosses." 176 Fed. Cl. at 256 (citing *Preseault*, 100 F.3d at 1533). Here too, unfortunately, "Plaintiffs have brought no evidence to illuminate that question." *Id.* We, therefore, cannot properly assess whether Plaintiffs can satisfy Rule 23(b)(3). These matters will also need to be fully explicated at the upcoming hearing before the Court.

## CONCLUSION

In light of these various evidentiary deficiencies, Plaintiffs are allowed **FOUR-TEEN (14) DAYS** from the date of this Order to **SUPPLEMENT** the record with documentation substantiating their position regarding their entitlement to class certification. Thereafter, the Government shall have **SEVEN (7) DAYS** to **SUBMIT** rebuttal evidence, if necessary.

Plaintiffs' Motion for Oral Argument, dkt. 60, is **GRANTED**. We shall set Plaintiffs' Motion for Class Certification, dkt. 10, for oral argument in order to review the evidence and to discuss the issues of ascertainability, the Little Tucker Act's jurisdictional limitation on monetary damages, and the elements of Rule 23, as described herein.

The Court's Courtroom Deputy Clerk is **DIRECTED** to make the necessary scheduling arrangements at the earliest convenient time on the Court's docket, consistent with and reflective of the deadlines imposed above.

IT IS SO ORDERED.

Date:      7/14/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael Armstrong
Lewis Rice LLC
marmstrong@lewisrice.com

Lindsay Brinton
Lewis Rice LLC
lbrinton@lewisrice.com

Thomas Hunter Brown
Lewis Rice LLC
hbrown@lewisrice.com

Brian R. Herman
DOJ-Enrd
brian.herman@usdoj.gov

Young Kang
DOJ-Enrd
young.kang@usdoj.gov

Meghan S. Largent
Lewis Rice LLC
mlargent@lewisrice.com