UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GREG ANDRES on behalf of themselves and other similarly situated parties, PAULA ANDRES on behalf of themselves and other similarly situated parties, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:24-cv-00038-SEB-KMB |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs Greg and Paula Andres ("Plaintiffs") brought this putative class action lawsuit against Defendant United States of America (the "Government"), seeking just compensation for the alleged Fifth Amendment taking of their private property for public use under the National Trails Act System Act Amendments of 1983 (the "Trails Act"), 16 U.S.C. § 1241 *et seq.* Pending before the Court is Plaintiffs' Motion for Class Certification. Dkt. 10. For the reasons discussed below, that motion is **GRANTED** as follows:

**BACKGROUND**

The following background material is outlined in greater detail in our July 14, 2025, Order Directing Further Proceedings. Dkt. 64. Although we assume the parties' familiarity with this factual predicate, we nonetheless provide an abbreviated summary below.

Plaintiffs and putative class members own fee simple interests in land underlying and/or adjacent to a 62.3-mile segment of rail line that runs from Bedford to New Albany,

Indiana, crossing through Clark, Floyd, Lawrence, Orange, and Washington Counties (hereinafter, the "Corridor"). The Corridor was constructed in the mid-1850s by the New Albany & Salem Railroad. One hundred thirty years thereafter, in September 1987, CSX Transportation ("CSXT"), a railroad operator, acquired the Corridor as well as an easement across Plaintiffs' real property for railroad purposes. In 2009, CSXT petitioned the Surface Transportation Board (the "Board") to discontinue service over the Corridor. On April 7, 2010, the Board granted CSXT's request, and, after 160 years, service ceased on May 12, 2010.

On December 18, 2017, CSXT petitioned the Board for authorization to abandon its railway operations along the Corridor. On February 28, 2018, the Board granted CSXT's request and issued a Notice of Interim Trail Use or Abandonment (hereinafter, the "2018 NITU"), pursuant to § 8(d) of the Trails Act, 16 U.S.C. § 1247(d), which permitted CSXT to negotiate a trail use agreement with the Indiana Trails Fund ("Indiana Trails") and the City of New Albany (the "City"). (CSXT and Indiana Trails apparently never did finalize an agreement.) In October 2022, the Board issued a second Notice of Interim Trail Use or Abandonment ("NITU") that authorized CSXT to negotiate new trail use agreements with the City and Radius Indiana ("Radius"), another prospective trail sponsor. In February 2023, CSXT sold and fully transferred its property rights in the Corridor to the City and Radius.

On February 23, 2024, Plaintiffs filed this putative class action lawsuit, seeking just compensation under the Fifth Amendment for the alleged taking of their property along the Corridor. They assert that, but for the 2018 NITU issued pursuant to § 8(d) the Trails Act,

2

CSXT's abandonment of the Corridor would have extinguished the railroad's easement(s), thereby restoring Plaintiffs' unencumbered property interests. Section 8(d), however, thwarted the reversion of Plaintiffs' exclusive possession and use of their property, resulting in an uncompensated taking by the Government. In accordance with the Little Tucker Act's jurisdictional limitations, the individual monetary damages sought by Plaintiffs do not exceed $10,000. 28 U.S.C. § 1346(a)(2).

On February 27, 2024, shortly after filing their class action complaint, Plaintiffs moved for class certification, pursuant to Federal Rule of Civil Procedure 23. Dkt. 10. As Plaintiffs' class certification motion pended, we discovered that, on February 22, 2024 (the day before this lawsuit was initiated), Plaintiffs' counsel had filed and sought class certification in a nearly identical putative class action lawsuit in the Court of Federal Claims. *Bauer v. United States*, No. 1:24-cv-287 (Fed. Cl. filed Feb. 22, 2024). Following a September 20, 2024, telephonic status conference, we stayed any ruling in our Court on Plaintiffs' pending class certification motion prior to the Court of Federal Claims's decision in *Bauer*.

On April 9, 2025, the Court of Federal Claims denied the landowner plaintiffs' motion for class certification, reasoning, *inter alia*, that the plaintiffs had failed to adduce sufficient evidence, beyond their factual averments, establishing the essential elements of an opt-in class under the Rule 23 of the Rules of the United States Court of Federal Claims. *See Bauer v. United States*, 176 Fed. Cl. 240, 248, 255–56 (2025).

On July 14, 2025, we issued an Order Directing Further Proceedings, wherein we detailed the evidentiary deficiencies precluding a final disposition of Plaintiffs' class

certification motion; allowed Plaintiffs an opportunity to supplement the record; and granted Plaintiffs' request for oral argument. Dkt. 64. We specifically directed the parties to prepare to discuss the Government's objections to class certification based on ascertainability, the Little Tucker Act, and the requirements of Federal Rule of Civil Procedure 23.

Plaintiffs timely submitted supplemental evidence, including a chart enumerating 292 affected parcels, their owner(s), the original conveyance source, location, and parcel size; a copy of the North Albany & Salem Charter (the "NA&S Charter"), the original railroad conveyance; a "sampling" of joint title stipulations filed in seven prior lawsuits involving the Corridor, wherein the Government agreed that the railroad obtained an easement for railroad purposes; approximately two dozen deeds showcasing that putative class plaintiffs own fee simple interests in property located along the Corridor; photographic "snapshots" of each putative plaintiff's property; and named Plaintiffs Mr. & Mrs. Andres's ownership deeds, photographic snapshots of their property, and related tax records. Dkt. 66–67. The Government opted not to submit rebuttal evidence, though it clarified at an August 4, 2025, telephonic status conference "that its decision not to file anything [wa]s not a concession of any points made by Plaintiffs' submission." Dkt. 71.

On September 5, 2025, both parties appeared through counsel for oral argument, after which the matter was taken under advisement. Dkt. 77. Plaintiffs' fully-briefed Motion for Class Certification, dkt. 10, is thus ripe for ruling.

## LEGAL STANDARD

The party seeking class certification must demonstrate by a preponderance of the evidence that the proposed class meets the requirements of Federal Rule of Civil Procedure

4

23; that is, the proposed class must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation. *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015) (citing Fed. R. Civ. P. 23(a)). Where, as here, "th[e] suit seeks money damages on behalf of the class, based on common questions," *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017), the party seeking class certification must also satisfy Rule 23(b)(3), which further requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## DISCUSSION

Plaintiffs seek certification of the following class:

> All persons who, as of February 28, 2018, owned a fee interest in property constituting any part of the Corridor for which the CSX Transportation, Inc. previously held an easement for railroad purposes and which is now occupied or controlled by the City of New Albany and/or Radius Indiana for trail use by virtue of the Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board on February 28, 2018 (as amended on October 12, 2022), and who claim a taking of their rights to possess, control, and enjoyment of their land pursuant to the [Board]'s NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the Little Tucker Act, where such claims do not exceed $10,000.00 per claim, or where the class member waives any damages in excess of $10,000.00 per claim.

> Excluded from this Class are all persons who have elected to pursue claims in separate lawsuits against the United States for compensation for the same interests in land, with the exception of *Bauer et al. v. United States*, No. [1]:24-cv-0287, pending in the Court of Federal Claims.

Dkt. 35 at 9.

At oral argument, the Government reasserted its opposition to class certification on the grounds that Plaintiffs' proposed definition creates an unascertainable "fail-safe" class and fails to comport with the Little Tucker Act's $10,000 claim limitation; and that Plaintiffs have failed to satisfy their evidentiary burden under Rule 23. We resolve these objections below.

## I.    Ascertainability & Fail-Safe Classes

The "implicit requirement of 'ascertainability' " requires "that a class be defined . . . clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A proposed class definition fails the ascertainability requirement when class membership depends on the merits of a putative class plaintiff's claim. *Id.* at 659–60. These so-called "fail-safe" classes are "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012). This, according to Seventh Circuit precedent, creates "an obvious fairness problem for the defendant," who "is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins*, 795 F.3d at 660. The Seventh Circuit has advised that fail-safe problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825.

Here, the Government asserts that Plaintiffs' proposed definition creates a fail-safe class by incorporating the essential elements of a takings claim such that class membership turns on the merits of putative plaintiffs' claim(s). A *prima facie* Trails Act takings claim

6

requires landowners' possession of fee simple interests in real property over which a railroad holds an easement that is extinguished by the issuance of a NITU. *See Memmer v. United States*, 50 F.4th 136, 139–40 (Fed. Cir. 2022) (explaining that a NITU effectuates a taking by precluding the vesting of state law reversionary interests in the right-of-way). By defining the proposed class according to putative class members' and the railroad's respective property interests, the Government contends, Plaintiffs have created a class by which its members either prevail on the merits or fall out without being bound by the judgment in the instant litigation.

The Government's fail-safe argument is well taken insofar as Plaintiffs' proposed class definition presupposes putative class members satisfying the essential elements of their claim(s) and thus presumes the Government's liability. However, rather than "flatly denying class certification on th[is] basis," *Messner*, 669 F.3d at 825, we shall revise the class definition to state as follows:

> All persons or entities who, as of February 28, 2018, owned an interest in real property valued in the amount of $10,000 or less that underlies and/or is contiguous to the railroad corridor on which CSX Transportation had the right to operate a railroad, and which corridor was authorized for trail use by the City of New Albany and Radius Indiana through a Notice of Interim Trail Use or Abandonment issued on February 28, 2018 (as amended on October 12, 2022) by the Surface Transportation Board, pursuant to the National Trails Systems Act, 16 U.S.C. § 1247(d).
>
> Excluded from this class are all persons or entities who have joined a separate lawsuit against the United States seeking compensation for the same above-described property interest(s); and/or whose property value(s) exceed $10,000, unless such persons or entities waive their right to recover any amount greater than $10,000.

The refined class definition thus resolves the fail-safe dilemma by focusing on the common factual circumstances contributing to putative plaintiffs' alleged Fifth Amendment injury: that is, their ownership of real property adjacent to and/or underlying (and thus encumbered by CSXT's interests in) the Corridor. Unlike the class definition proposed by Plaintiffs, the revised definition avoids creating a class comprised solely of individuals who can sustain valid claims for the deprivation "of their rights to possess, control, and enjoyment of their land." Dkt. 35 at 9. Insofar as progress in this litigation reveals a basis on which to revisit the class definition, or to dismiss the class allegations altogether, we anticipate the parties will alert the Court accordingly. *See Alpha Tech Pet., Inc. v. Lagasse, LLC*, 205 F. Supp. 3d 970, 978 (N.D. Ill. 2016).

## II.    The Little Tucker Act

Under the Little Tucker Act, "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress . . . ." 28 U.S.C. § 1346(a)(2). In other words, the Little Tucker Act "unequivocally provides the Federal Government's consent to suit for certain money-damages claims." *United States v. Bormes*, 568 U.S. 6, 10 (2012).[1]

---

[1] By contrast, the Tucker Act, 28 U.S.C. § 1491, the Little Tucker Act's statutory companion whose "scope . . . is otherwise the same," "assigns jurisdiction to the Court of Federal Claims regardless of monetary amount." *Bormes*, 568 U.S. at 10 n.2. Notably, the Federal Circuit is also vested with "exclusive jurisdiction 'of an appeal from a final decision of a district court of the United States if the jurisdiction of that court was based, in whole or in part, on' the Little Tucker Act." *Id.* at 9 (quoting 28 U.S.C. § 1295(a)(2)) (citation modified).

A "plaintiff may pursue . . . a [Little Tucker Act] claim in a district court if the plaintiff waives his right to recover the amount exceeding $10,000." *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed. Cir. 1988); *e.g., Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 697 n.4 (N.D. Ill. 2020). In Fifth Amendment Takings actions, the "just compensation" owed to a prevailing plaintiff is "measured by the market value of the property at the time of the taking . . . ." *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (citation modified). "The amount of a claim under the Little Tucker Act, for jurisdictional purposes, is based on the actual recovery sought by a plaintiff pursuant to that claim and is not based on the potential worth of the claim." *Smith*, 855 F.2d at 1553.

The Government here contends that our Little Tucker Act jurisdiction cannot encompass Plaintiffs' proposed class because the named Plaintiffs cannot bind absent class members to a waiver of damages in excess of $10,000. Dkt. 31 at 32. The Government's argument is premised on the established legal principle that, in Class Action Fairness Act cases, putative class representatives cannot preemptively waive absent class members' recovery prior to class certification. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (pre-certification stipulations bind only named plaintiffs and thus cannot establish amount in controversy for purposes of the Class Action Fairness Act); *see also Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (Representative plaintiffs in class proceedings under the Class Action Fairness Act owe "a fiduciary duty to [their] fellow class members" and thus may not "throw away what could be a major component of the class's recovery.").

9

At oral argument, the Government directed us to *Edward L. & Janice R. Huffman Living Trust v. United States*, a 2016 district court decision from the Eastern District of Arkansas denying a motion to certify a class of landowners in a rails-to-trails action. No. 4:15-CV-00484-JLH, 2016 WL 7508834, at *3 (E.D. Ark. May 11, 2016) (Holmes, J.). In *Huffman*, the proposed class included landowners "who claim[ed] a taking . . . in the amount no more than [$10,000.00]." *Id.* at *2. The *Huffman* plaintiffs maintained that landowners whose damages exceeded $10,000 were "not excluded from the class," but rather were "simply . . . capped at $10,000 . . . ." *Id.* at *3. Insofar as "putative class member[s] . . . wishe[d] to pursue more than $10,000 in damages," the plaintiffs argued, they "could either opt out of the class or proceed with knowledge of the cap." *Id.* The *Huffman* court rejected this approach, reasoning that the representative plaintiffs could not legally bind absent class members (whose damages exceeded $10,000) to a "promis[e]" that they would either opt out or would otherwise agree to accept less damages than that to which they were entitled. *Id.* According to the *Huffman* court, the plaintiffs were effectively seeking "certification of a class action composed of some claims over which th[e] [c]ourt d[id] not have subject-matter jurisdiction." *Id.*

Plaintiffs respond that the instant lawsuit avoids the jurisdictional dilemma presented in *Huffman* because property owners whose (potential) recovery would exceed $10,000 do not become class members in our case unless they voluntarily cap their potential recovery. Thus, unlike the "absent class members" in *Huffman* whose noncompliant claims would have compelled them to opt out of the litigation, class membership here is conditioned upon adherence to the Little Tucker Act.

At this juncture, we are satisfied that Plaintiffs' proposed class, as modified above, complies with the Little Tucker Act and ensures that putative class claims fall within our jurisdiction by excluding landowners who would be entitled to an award greater than $10,000 (unless they waive such recovery). *See O'Meara v. United States*, 59 F.R.D. 560, 567–68 (N.D. Ill. 1973) (raising jurisdictional concern under the Little Tucker Act *sua sponte* and noting that "the proposed class definition will have to limit the class to those persons who would otherwise qualify as class members and whose projected benefits . . . would not exceed $10,000."). Unlike the proposed class in *Huffman*, the class here does not include claims over which we would lack subject-matter jurisdiction.

We are similarly unpersuaded by the Government's efforts to construe the claim limitation as an impermissible "precertification stipulation" that hinders putative class members from obtaining their maximum potential recovery. The cases cited by the Government buttress our conclusion. Dkt. 31 at 32–33 (citing *Knowles*, 568 U.S. at 592–93; *Back Drs. Ltd.*, 637 F.3d at 830–31). The Supreme Court's decision in *Knowles* and the Seventh Circuit's decision in *Back Doctors* involved motions to remand class action lawsuits under the Class Action Fairness Act, 28 U.S.C. § 1332(d), which statute vests federal courts with jurisdiction over class actions where, among other requirements, the amount in controversy—in the aggregate—exceeds $5 million. *Knowles*, 568 U.S. at 592; *Back Drs. Ltd.*, 637 F.3d at 829. The putative class representatives in those cases argued that the amount-in-controversy requirement was not satisfied because they had stipulated, respectively, that the class's *total* recovery would not exceed $5 million. *Knowles*, 568 U.S. at 591; *Back Drs. Ltd.*, 637 F.3d at 829. Here, by contrast, our jurisdiction under the Little

11

Tucker Act turns on an assessment of the *individual* claims of *individual* class members. *See United States v. Will*, 449 U.S. 200, 211 n.10 (1980); *Bywaters v. United States*, 196 F.R.D. 458, 466 (E.D. Tex. 2000) ("Plaintiffs are permitted to waive recovery in excess of $10,000 for jurisdictional purposes . . . ."). Whether the named Plaintiffs waive their entitlement to damages in excess of $10,000 thus does not bind (nor purport to bind) absent class members to the same.

## III.    Requirements of Rule 23

Under Rule 23, a proposed class must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation. Additionally, where the putative class seeks monetary damages, as is the case here, the party seeking class certification must also satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

Under Rule 23(a), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While 'impracticable' does not meant 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.' " *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting 7A Wright & Miller's Federal Practice & Procedure § 1762 (3d ed.)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*,

850 F.3d 849, 859 (7th Cir. 2017). Courts must weigh the practicability of joinder by considering "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Anderson*, 986 F.3d at 777.

Applying this requirement to the case at bar, we are informed that the putative class is comprised of approximately 239 individuals, who own a total of approximately 292 parcels located along the Corridor. *See* dkt. 66-1. Plaintiffs' estimations are based on publicly available data accessible online through county Geographic Information Systems and county tax records. According to Plaintiffs, "approximately 10% of the claims are less than 1,000 square feet, and approximately 40% are less than 0.1 acres, with the average claim less than one-third of an acre." Dkt. 11 at 8. Additionally, the putative class is geographically confined to the five Indiana counties through which the Corridor runs. Based on the size of these parcels, Plaintiffs contend that joinder would be impracticable because many of the potential class members stand to recover only modest awards, rendering a class action the most efficient means of proceeding.

We conclude that Plaintiffs have satisfied their burden of establishing, by the preponderance of the evidence, that the class is so numerous that joinder is impracticable. A cursory review of Plaintiffs' evidentiary submissions, *see, e.g.*, dkt. 66-1, confirms that many (though not all) of the affected parcels are relatively small. Although the putative class's limited geographical dispersion lends some support to the feasibility of joinder, Plaintiffs have nonetheless demonstrated that the cost of litigation would easily outweigh

individual claimant's potential recovery, which suggests that proceeding as a class is likely the most, if not the only, means of obtaining relief.

The Government argues that Plaintiffs have not satisfied the numerosity component of class certification because they have not demonstrated which of the 292 parcels would, by virtue of their respective market value, fall within our subject-matter jurisdiction and thus constitute part of the class. *See* dkt. 31 at 20, 32–33. The Government again cites to *Huffman*, where the court discounted the plaintiffs' estimated fifty-seven-member class because they "d[id] not even attempt to speculate as to how many putative class members were damaged by the taking in the amount of $10,000 or less." 2016 WL 7508834, at *3. Here, by contrast, Plaintiffs have demonstrated that a sizeable portion of the putative class—approximately forty percent—consists of claims for less than 0.1 acre. Although a reliable measure of putative plaintiffs' damages is available only with the input of a professional appraisal of the affected properties, Plaintiffs' estimations are sufficient at this stage in the litigation to satisfy numerosity requirements.

The Government also asserts that joinder is not impracticable here, as evidenced by several rails-to-trails actions arising from the Corridor that have proceeded (and concluded) in the Court of Federal Claims without the aid of class-action mechanisms. *See Zinser v. United States*, No. 1:18-cv-306 (Fed. Cl. filed Feb. 28, 2018) (nearly 300 named plaintiffs); *Popp v. United States*, No. 1:19-cv-358 (Fed. Cl. filed Mar. 8, 2019) (twenty-six named plaintiffs). Notably, however, class actions in the Court of Federal Claims proceed as opt-*in* classes, not opt-*out* classes. Indeed, in denying the *Bauer* plaintiffs' class certification motion, the Court of Federal Claims highlighted that "class membership [in an opt-in class]

14

is essentially indistinguishable from joinder in that it requires affirmative action on the part of every potential plaintiff." 176 Fed. Cl. at 249. It therefore remains unclear to us how the lack of prior opt-*in* class actions relating to the Corridor illuminates whether joinder, as opposed to an opt-*out* class, is impracticable with regard to the case before us.

## B.    Commonality

The commonality inquiry asks whether "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a), which requires "class members [to] have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation modified). Class members' "claims must depend upon a common contention," and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Under Rule 23, "a single common question will do." *Id.* at 359 (citation modified).

Plaintiffs assert that a significant majority of the affected parcels are encumbered by a railroad easement that originates from the NA&S Charter.[2] According to Plaintiffs, the NA&S Charter functionally permitted the railroad to "condemn any needed right of way to construct and operate the railroad system for" approximately fifty years, after which time the NA&S Charter "would either be renewed or the land would revert back to the landowner." Dkt. 66 at 4. By Plaintiffs' estimates, the NA&S Charter granted a railroad

---

[2] At oral argument, the Government did not concede that the NA&S Charter conveyed an easement. Thus, whether or for what purpose(s) the NA&S Charter conveyed an easement remains unresolved.

easement across 265 parcels (owned by 212 individuals), which equates to ninety-one per-cent of the putative class's claims. *Id.* As for the remaining members of the putative class, Plaintiffs assert that CSXT acquired an easement through so-called "original conveyances," which "are substantially similar to the [NA&S] Charter in that they granted a limited ease-ment for railroad purposes." *Id.* (Indeed, a "sampling" of joint title stipulations from seven similar lawsuits involving the Corridor demonstrate that the Government, in those cases, agreed that similar "original conveyances" created easements limited to railroad purposes. *See* dkt. 66-3.) Irrespective of whether CSXT obtained its easement through the NA&S Charter or an original conveyance, Plaintiffs maintain that putative class members possess similar ownership interests in the encumbered land: that is, as of the date of the 2018 NITU, putative class members held fee simple interests in land over which CSXT possessed a right-of-way for railroad purposes. Based on the nature of CSXT's property interest in the Corridor, Plaintiffs maintain that this lawsuit presents a common question regarding whether the 2018 NITU effected a taking.

The Government's central argument in opposition is that underlying factual varia-tions among class members concerning the nature of their property interest and/or the scope of CSXT's easement defeat commonality. Because the existence of "some factual variation among the class grievances will not defeat a class action," we disagree with the Govern-ment's contention and conclude that Plaintiffs have met their burden of establishing com-monality. *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir. 1992). The dispositive legal issue—whether the 2018 NITU effected a taking—is capable of classwide resolution, as it depends on "the uniform application of a single federal statute." *Schmitt v. United*

*States*, 203 F.R.D. 387, 401 (S.D. Ind. 2001) (Young, J.) (certifying Trails Act class of 120 plaintiffs in two counties). The issuance of the 2018 NITU "was a single act that affected all putative class members," thus operating as "the wellspring of all the putative class members' claims." *Geneva Rock Prod., Inc. v. United States*, 100 Fed. Cl. 778, 788–89 (2011).

### C.    Typicality

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario*, 963 F.2d at 1018. Typicality is satisfied when the class representatives' claims share the same essential characteristics as those of the putative class members. *Retired Chicago Police Ass'n*, 7 F.3d at 597. "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation modified). In other words, typicality is "generally met" when the defendant has engaged "in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (citations omitted).

Mr. and Mrs. Andres, as putative class representatives, have demonstrated that their claims are typical of the class. Mr. and Mrs. Andres, like the putative class plaintiffs, aver that they own real property that was previously encumbered by CSXT's railroad easement and that the 2018 NITU effected a taking. Likewise, the fact that CSXT's easement over the named Plaintiffs' property originated from the NA&S Charter, as is the case for ninety-one percent of the putative class, further supports the conclusion that typicality is satisfied. Plaintiffs have adequately substantiated these allegations by providing documentation of

Mr. and Mrs. Andres's ownership deeds, photographic snapshots of their property, and relevant tax records, all of which aligns with their averments that they, like the putative class, owned an interest in real property located along the Corridor on the date of the 2018 NITU; and that CSXT had acquired its right of way over their land by operation of the NA&S Charter.

### D.    Adequacy of Class Representatives

District courts must also ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation inquiry is two-fold: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *modified* (Sept. 22, 2011). In our July 14th Order, we concluded that Plaintiffs had satisfied their burden of demonstrating the adequacy of their proposed class counsel. Dkt. 64 at 19. Thus, we turn to whether the named Plaintiffs can serve as adequate representatives of the putative class.

The "adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 331 (1980). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018. The Seventh Circuit has rejected the proposition that "the mere possibility that a trivial level of

intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

At this juncture, there are no known conflicts of interest between the named Plaintiffs and the putative class members. Indeed, Plaintiffs maintain that the "nature of these claims do not pit landowners against one another," as "[e]ach class member will have their own claim(s), which in no way impact recovery by other class members." Dkt. 66 at 7. Accordingly, Plaintiffs have satisfactorily demonstrated that the putative class is adequately represented.

### E.    Rule 23(b): Predominance & Superiority

Because Plaintiffs seek monetary damages against the Government, they must also satisfy the conditions set forth in Federal Rule of Civil Procedure 23(b)(3), which provides that "the court [must] find[ ] that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant considerations include: the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy already begun by class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

#### 1.    Predominance

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a

single adjudication." *Messner*, 669 F.3d at 815 (citation modified). "Predominance is a qualitative rather than a quantitative concept." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Of course, "[m]ere *assertion* by class counsel that common issues predominate is not enough." *Id.* at 1087 (emphasis in original). Rather, "the predominance inquiry requires a court to understand what the plaintiffs will need to prove and evaluate the extent to which they can prove their case with common evidence." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023) (citation modified). "At bottom, the predominance requirement is only met when common questions represent a *significant* aspect of the case." *Id.* at 339 (citation modified).

The predominance analysis "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "Only by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common, individual, and predominant." *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If, by contrast, "the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quoting *Blades*, 400 F.3d at 566).

"Where the railroad held an easement to the underlying property, the conversion of the right-of-way to a recreational trail, and thus the implementation of a new easement, can form the basis for a physical takings claim under the Fifth Amendment to the Constitution."

*Memmer*, 50 F.4th at 139–40 (citing *Preseault v. United States*, 100 F.3d 1525, 1550 (Fed. Cir. 1996) (en banc)). The issuance of an NITU is "the only government action in the rail-banking process that . . . prevent[s] abandonment of the corridor . . . and preclude[s] the vesting of state law reversionary interests in the right-of-way." *Id.* at 140 (emphasis omitted) (citations omitted). Thus, the essential components of a Trails Act takings claim include plaintiffs' fee ownership of land encumbered by a railroad right-of-way that is converted to a public trail by operation of an NITU. *See id.*

Based on the *prima facie* elements of Plaintiffs' alleged Fifth Amendment injury, we find that the common questions presented in this case support a finding of predominance. Each putative plaintiff's claim arises from a single government act, the issuance of the 2018 NITU, and requires the application of Indiana property law to determine the nature and scope of CSXT's property interest(s). The Government nonetheless contends that the determination of liability (i.e., whether the 2018 NITU effectuated a taking) is overridden by "two subsidiary property-specific, fact-intensive inquires" into "the nature of the railroad's ownership interests throughout the [C]orridor"; and into "the existence of [Plaintiffs'] own and the putative class members' alleged ownership interests in the [C]orridor." Dkt. 31 at 27. The Government also asserts that calculating the just compensation due to successful claimants will overwhelmingly entail highly individualized analyses. We address each argument below.

Plaintiffs' submission of the NA&S Charter demonstrates that assessing the nature and scope of CSXT's easement can be accomplished for a significant majority of the putative class (according to Plaintiffs, ninety-one percent) using common evidence. The NA&S

Charter thus allows us to discern "the purpose for which the property [wa]s acquired," which, under Indiana law, informs "the scope of the easement . . . ." *Howard v. United States*, 964 N.E.2d 779, 782 (Ind. 2012). Although a limited portion of the railroad's interests in the Corridor were acquired through "original conveyances," Plaintiffs have sufficiently demonstrated that the nature of CSXT's property rights can be determined on the basis of common evidence.

Certainly, as the Government maintains, matters of title and just compensation unavoidably implicate individualized assessments. However, we are not persuaded that parcel-by-parcel title determinations must precede the adjudication of common liability issues, which would be shared among the class. *Schneider v. United States*, 197 F.R.D. 397, 401 (D. Neb. 2000) (certifying state-wide Trails Act class for the "limited purpose" of resolving question of liability and postponing resolution of title determinations). At bottom, the individualized inquiries identified by the Government "need not be resolved prior to the common issues" regarding the uniform application of a single federal statute to a single rail line that runs through five Indiana counties. *Id.*; *e.g., Moore v. United States*, 41 Fed. Cl. 394, 398–99 (1998); *Hash v. United States*, No. CV 99-324-S-MHW, 2000 WL 1460801, at \*15 (D. Idaho July 7, 2000). At this juncture, we are satisfied that questions pertaining to the nature of the railroad's easement and the legal ramifications of the 2018 NITU predominate.[3]

---

[3] We note as well that we maintain wide discretion under Rule 23 to amend or decertify the class at later stages of the proceeding if doing so is necessary to address individual inquiries. *Bywaters*, 196 F.R.D. at 469–70 (certifying Trails Act class of 500 plaintiffs in five counties).

Finally, we reject the Government's contention that the need for individualized proof to assess damages for each putative class member precludes Plaintiffs from establishing the predominance of common questions. *See* dkt. 31 at 28. "It would drive a stake through the heart of the class action device, in cases in which damages were sought . . . , to require that every member of the class have identical damages." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Thus, "the fact that damages are not identical across all class members should not preclude class certification." *Id.*; *see, e.g.*, *In re IKO Roofing Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (rejecting contention that "commonality of damages" is a "legally indispens[a]ble" aspect of predominance); *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of the City of Chicago*, 307 F.R.D. 475, 486 (N.D. Ill. 2015) (rejecting argument against class certification based on "some amorphous and purely hypothetical possibility that individualized damages *might* override the common questions at the heart of th[e] action") (emphasis in original); *Schneider*, 197 F.R.D. at 402 (questions of individual money damages did not preclude certification).

### 2.    *Superiority*

The superiority element limits class actions to cases where proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) " 'opt-out' class facilitates the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " *Suschanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

Plaintiffs here have adequately demonstrated that a class proceeding is the superior means of litigation because "a significant number of putative class members have small claims" and otherwise lack the incentive to pursue their claims independently. Dkt. 35 at 23. As Plaintiffs asserted at oral argument, a reliable determination of the precise value of their claims requires the significant expenditure of resources in the form of expert property appraisals. Proceeding as a class, however, spares class participants with modest claims the time and expense of independent litigation and encourages efficiencies in common title research and property assessments. Additionally, all putative class plaintiffs are Indiana citizens, making this Court a desirable forum for litigation of their claims.

## CONCLUSION

For the reasons outlined above, Plaintiffs' Motion for Class Certification is **GRANTED**. Dkt. 10. The Court hereby **CERTIFIES** the following class:

> All persons or entities who, as of February 28, 2018, owned an interest in real property valued in the amount of $10,000 or less that underlies and/or is contiguous to the railroad corridor on which CSX Transportation had the right to operate a railroad, and which corridor was authorized for trail use by the City of New Albany and Radius Indiana through a Notice of Interim Trail Use or Abandonment issued on February 28, 2018 (as amended on October 12, 2022) by the Surface Transportation Board, pursuant to the National Trails Systems Act, 16 U.S.C. § 1247(d).

> Excluded from this class are all persons or entities who have joined a separate lawsuit against the United States seeking compensation for the same above-described property interest(s); and/or whose property value(s) exceed $10,000, unless such persons or entities waive their right to recover any amount greater than $10,000.

Additionally, the Court hereby **APPOINTS** attorneys Lindsay Brinton, Meghan S. Largent, Michael Armstrong, and Thomas Hunter Brown as class counsel. Dkt. 64 at 19.

24

This case shall proceed accordingly.

IT IS SO ORDERED.

Date:

_____
9/25/2025

_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael Armstrong
Lewis Rice LLC
marmstrong@lewisrice.com

Lindsay Brinton
Lewis Rice LLC
lbrinton@lewisrice.com

Thomas Hunter Brown
Lewis Rice LLC
hbrown@lewisrice.com

Brian R. Herman
DOJ-Enrd
brian.herman@usdoj.gov

Young Kang
DOJ-Enrd
young.kang@usdoj.gov

Meghan S. Largent
Lewis Rice LLC
mlargent@lewisrice.com